IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>DAVID L. VETTEL,<br><br>    Defendant. | 4:21CV3099<br><br>**FINDINGS OF FACT AND<br>CONCLUSIONS OF LAW** |

This matter is before the Court on the allegations that Defendant, David L. Vettel, failed to comply with his duty to report transactions with a foreign financial agency. A bench trial was held on January 23, 2024. The Honorable Joseph F. Bataillon presided over the trial. Present in Court were Daniel Applegate on behalf of Plaintiff, the United States of America; the United States' agent Elizabeth Urtecho; Ryan Watson on behalf of Vettel; and Vettel. Filing No. 37. The Court submits the following Findings of Fact and Conclusions of Law, consistent with Federal Rule of Civil Procedure 52.

**I. FINDINGS OF FACT**

Vettel was an international agricultural salesman who did business in Eastern Europe. He opened a Swiss bank account and, from 2006 to 2011, failed to report the account's existence to the United States. The United States seeks to impose a penalty on Vettel for his failure to report this foreign bank account.

In the pretrial order, the parties agreed on an extensive set of facts. In pertinent part, they agree Vettel had a 30-year history in international agricultural sales, primarily for a company called Grain Systems Incorporated. In 2006, Vettel set up a bank account in Switzerland at BSI SA Bank ("the BSI Account"). Vettel deposited money into the

1

account that he earned from his business activities in Ukraine, both for BSI and as a consultant. Vettel does not recall discussing whether the funds in the BSI Account were subject to taxation by the United States when he first established the account. Vettel hoped that the representatives at BSI bank would serve as financial advisors with respect to the investments made with his funds in the BSI Account, but he does not know if the bank's investment strategy also included any tax strategy.

Vettel's BSI Account was held in the name of Wanstead International, LTD, rather than in Vettel's name. Wanstead International was a company purportedly domiciled in Belize, and Vettel knew this based on the documents he signed when he opened the BSI Account. Vettel had no connection to Belize and selected the name "Wanstead International" from various options presented to him by BSI bank. BSI bank did not tell Vettel why he had to select a company or what Wanstead International did, and Vettel did not question why a Belize company would be involved with his BSI account. According to the documents Vettel signed, he was the director of Wanstead International. However, Vettel did not file any tax returns in any country for Wanstead International and was not aware of any tax returns filed by anyone else on behalf of Wanstead International.

After setting up the BSI Account, Vettel would visit the bank in Switzerland to check on the investments and make withdrawals when in Europe on business trips, generally around two to three times each year. BSI bank kept the account opening documents and account statements at the bank location in Switzerland rather than sending them to Vettel. Vettel paid a fee to BSI bank to hold account statements and documents at the bank in Switzerland. The BSI Account opening documents make no reference to U.S. taxation, except for a "Declaration of Non-U.S. Tax status for companies and other legal entities"

that Vettel signed and that included a question noting that Wanstead International is a Belize company and is not a flow-through company for U.S. tax purposes.

Vettel did not believe that he needed to worry about U.S. taxes because the money he received while working in Ukraine stayed in Europe as he was ultimately going to reinvest it in Turkey. As Vettel testified, he believed, "it was earned there, stayed there, and was destined for there so there was no need for any tax -- to be concerned about any taxation." Filing No. 40 at 23. When Vettel closed the BSI Account, he transferred the funds that remained in the account to Turkey (including a transfer made via Cyprus) for investment in a business venture and into a new bank account in Turkey.

Starting in about 2004 or 2005, Vettel hired Certified Public Accountant, Terri Phelps, to prepare his federal income tax returns. Phelps prepared Vettel's federal income tax returns for tax years 2006, 2007, 2008, 2009, 2010, and 2011. Trial Exhibit 1; Trial Exhibit 2; Trial Exhibit 3; Trial Exhibit 4; Trial Exhibit 6; Trial Exhibit 8. When having his income tax returns prepared, Vettel accumulated all necessary documentation and sent it to Phelps by next day courier. Vettel did not provide Phelps with information about the BSI Account in conjunction with the preparation of his tax returns from 2006 to 2011.

Phelps sent Vettel an "organizer" each year in which she prepared his federal income tax return that contained a series of questions to which Vettel was supposed to respond in order to aid Phelps's preparation. Trial Exhibit 5; Trial exhibit 7. The organizer included a question about whether Vettel had a foreign bank account. Vettel did not fill out the questions in the organizer because he felt sending Phelps the documents was sufficient. Phelps's engagement letter advised Vettel to review the forms she prepared prior to signing, and to ask questions about anything he did not understand. Vettel had

3

the opportunity to review the prepared tax returns prior to filing, but testified he did not review them. Filing No. 40 at 45. On Line 7a of the Form Schedule B attached to each of Vettel's Forms 1040 Individual Income Tax Return from 2006 to 2011, the box asking whether the taxpayer (David Vettel or his wife) held an interest in or signature or other authority over a financial account in another country during the relevant year is marked "no." *See, e.g.*, Trial Exhibit 1 at 13.

The balance in Vettel's BSI Account exceeded $10,000 U.S. Dollars in each year from 2006 to 2011. Vettel did not timely file a Form TD F 90-22.1, Report of Foreign Bank and Financial Accounts ("FBAR") with the Department of the Treasury for tax years 2006, 2007, 2008, 2009, 2010, or 2011. By letter dated February 8, 2014, BSI wrote Vettel regarding the then-closed BSI Account. Vettel thereafter informed Phelps and, subsequently, the United States about the 2006 to 2011 BSI Account funds via the filing of amended tax returns for those years. The United States assessed penalties against Vettel for willfully failing to timely declare his foreign-bank accounts for each year of violation as follows: $72,556 for 2006; $100,000 for 2007; $78,040 for 2008; $77,201 for 2009; $192,066 for 2010, and $100,000 for 2011 for a total of $619,863.

The United States moved for summary judgment. Filing No. 23. The Court granted partial summary judgment to the United States, finding there was no dispute that Vettel is a U.S. citizen, that he was subject to the foreign-bank reporting requirement, that his account contained more than $10,000, and that he failed to report the account each year from 2006 through 2011. The Court also found no dispute as to the United States' calculation of the amounts in Vettel's account, the amount of the penalty for willfulness should it apply, or the calculation of interest and fees. However, the Court found there

was disputed evidence as to whether Vettel's violation of the foreign-bank reporting requirement was willful or not and, consequently, whether the fine should be capped at $10,000 per violation or be "the greater of $100,000 or 50% of the balance in the foreign account at the time of the violation." Filing No. 32; 31 U.S.C. § 5321(a)(5)(C).

## II.    CONCLUSIONS OF LAW

Federal Rule of Civil Procedure 52(a) requires a district court, following a bench trial, to "find the facts specially and state separately its conclusions of law." *Darst-Webbe Tenant Ass'n Bd. v. St. Louis Hous. Auth.*, 339 F.3d 702, 711 (8th Cir. 2003).

At the Pretrial Conference, the parties agreed that the sole issue to be tried was "whether David Vettel acted willfully in failing to report his foreign bank account for the years 2006, 2007, 2008, 2009, 2010, and 2011." Filing No. 34 at 16.

The Bank Secrecy Act requires a "citizen of the United States . . . to keep records, file reports, or keep records and file reports, when the . . . citizen . . . makes a transaction or maintains a relation for any person with a foreign financial agency," the so-called FBAR reporting requirement. 31 U.S.C. § 5314. For purposes of disclosing foreign bank accounts specifically, the implementing regulations impose a reporting requirement for each account exceeding $10,000. 31 C.F.R. § 1010.306(c). The Secretary of Treasury can impose a penalty of $10,000 upon any person who violates this foreign-bank reporting requirement, except that in cases of "[w]illful violations," it may impose a penalty not to exceed the greater of $100,000 or 50% of the balance in the foreign account at the time of the violation.[1] 31 U.S.C. § 5321(a)(5)(C). The United States contends Vettel should

---

[1] The highest annual balances in the BSI account were: $469,723 on December 31, 2006; $624,494 on December 31, 2007; $665,647 on December 31, 2008; $658,484 on December 31, 2009; $1,239,726 on December 31, 2010; and $1,186,036 on June 30, 2011. Filing No. 25-2 at 4; Filing No. 25-26; Filing No. 25-27; Filing No. 25-28.

5

be liable for a penalty of $619,863 for a willful violation while Vettel contends his violation was not willful and is therefore capped at $10,000 per violation. The Government bears the burden to prove by a preponderance of the evidence that a defendant willfully violated the FBAR requirements." *United States v. McBride*, 908 F. Supp. 2d 1186, 1201 (D. Utah 2012); *United States v. Flume*, 390 F. Supp. 3d 847, 854 (S.D. Tex. 2019).

The United States Supreme Court has held that, "where willfulness is a statutory condition of civil liability, it is generally taken to cover not only knowing violations of a standard, but reckless ones as well." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57 (2007). The Court has defined "recklessness" as "violating an objective standard: action entailing 'an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Id.* at 68 (quoting *Farmer v. Brennan*, 511 U.S. 825, 836 (1994)); *see also Godfrey v. United States*, 748 F.2d 1568, 1577 (Fed. Cir. 1984) (holding in the context of federal tax law that "willful conduct" includes "a reckless disregard of an obvious and known risk that taxes might not be remitted"). Importantly, "[a]ctions can be willful even if taken on the advice of another." *Norman v. United States*, 942 F.3d 1111, 1116 (Fed. Cir. 2019). Courts have also construed "willfulness" to include willful blindness to the FBAR reporting requirement. *See, e.g.*, *United States v. Goldsmith*, 541 F. Supp. 3d 1058, 1084 (S.D. Cal. 2021); *accord Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 760-61, (2011) (holding that willful blindness meets the civil willfulness requirement in a case outside the FBAR context).

The Court heard testimony from Vettel; Elizabeth Urtecho, IRS Agent; and by designated deposition testimony from Terri Phelps, Vettel's CPA. It also received exhibits from both parties including copies of Vettel's tax returns, emails, BSI account documents,

correspondence regarding Vettel's eventual disclosure, and the Department of Justice's non-prosecution letter to Vettel.

The Court considers Vettel's own explanation of his failure to report the bank accounts to be of primary importance in assessing whether he acted willfully. Vettel testified that he largely relied on the advice of the BSI officials in setting up the account, including when it came to selecting Wanstead International as the account holder. The Court also credits his testimony that he believed that since the money was being earned in Ukraine and reinvested in Turkey, he did not need to pay taxes or otherwise report it to the United States.

However, Vettel's subjective belief that he did not owe U.S. taxes does not preclude a finding of willfulness. See *Lefcourt v. United States*, 125 F.3d 79, 83 (2d Cir. 1997) (stating "[i]t is irrelevant that the filer may have believed he was legally justified in withholding such information" if it is determined he acted purposefully rather than inadvertently). At a minimum, Vettel acted recklessly in disregarding his obligation to report the BSI account. First, Vettel testified that he did not know of any taxes, American or otherwise, that were paid on the funds in the BSI account. While Vettel credibly testified that he did not think the funds were subject to taxation in the United States because they were earned overseas and reinvested overseas, paying *no* taxes on the funds in any country at all suggests Vettel was purposely avoiding learning of any taxation or reporting requirements. See *United States v. Williams*, 489 F. App'x 655, 658 (4th Cir. 2012) (stating that willfulness "can be inferred from a conscious effort to avoid learning about reporting requirements" (quoting *United States v. Sturman*, 951 F.2d 1466, 1476 (6th Cir. 1991))). Vettel also did not question BSI instructing him to name the account in

7

Wanstead's name rather his own, suggesting he keep his correspondence at the bank rather than having it mailed to him, or having him sign the form to divest the account of all U.S. based securities. In isolation, any of these factors may not suggest a reckless disregard of his reporting requirement, but jointly, and in conjunction with Vettel's professional experience, these factors should have, at minimum, raised a red flag for Vettel that he was being given incorrect advice and should conduct his own independent investigation into whether he had any tax and reporting obligations for the funds in the BSI account. His repeated failure to do so is suggestive of a conscious effort to avoid learning of his reporting obligations.

Additionally, Vettel did not inform his spouse nor his accountant about the BSI Account. For each of the years in which she prepared Vettel's taxes, Phelps sent him an organizer asking if he had any interest or authority over a bank account in a foreign country. Trial Exhibit 5 at 3. She then provided Vettel with a copy of the prepared returns for his review. Vettel signed the tax forms, including the verification that he did not have any foreign bank accounts. Although Vettel denies answering the organizer questions or reviewing his tax forms, he is charged with having constructive knowledge of the contents of his own tax returns by virtue of his signature. *See United States v. McBride*, 908 F. Supp. 2d 1186, 1206 (D. Utah 2012) ("A taxpayer's signature on a return is sufficient proof of a taxpayer's knowledge of the instructions contained in the tax return form and in other contexts."). Vettel also testified that he would discuss his salary, 401(k), and all his U.S.-based investments with his wife, and they had a joint bank account together, but that he never told her about the BSI account. Filing No. 40 at 27. That Vettel did not discuss the account with Phelps or his spouse despite sharing all other financial information with both

8

of them shows willfulness blindness to the FBAR requirement and a reckless disregard of an obvious and known risk that he was not properly disclosing the foreign account and wished to conceal that fact.

Based on this evidence, the Court finds Vettel acted willfully in failing to meet the FBAR reporting requirement. As such, the United States properly assessed the enhanced penalties for willfulness as follows: $72,556 for 2006; $100,000 for 2007; $78,040 for 2008; $77,201 for 2009; $192,066 for 2010, and $100,000 for 2011 for a total of $619,863. The United States of America also seeks interest accrued under 31 U.S.C. § 3717(a)(1), penalties for late payment under 31 U.S.C. § 3717(e)(2), and associated fees.[2] Because the Court finds Vettel acted willfully, the United States is entitled to the penalty and associated interest, late penalty, and fees.

### III. CONCLUSION

Based on the findings of fact and conclusions of law set forth herein, the Court finds Vettel acted willfully in violating the FBAR reporting requirement. The United States of America's assessment of the enhanced penalty amount was therefore proper. A separate judgment will be entered in accordance with this Memorandum and Order.

Dated this 11th day of April, 2024.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge

---

[2] The Court already determined on summary judgment that Vettel does not contest the amount of this calculation should he be found liable for the willfulness penalty. *See* Filing No. 32 at 5.

9